Dennis Van Dusen, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Linda Mooney, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 3, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

David J. Graban, Fruit, Dill, Goodwin & Scholl, for petitioners.

Jason W. Manne, Assistant Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., December 12, 1983:

Dennis Van Dusen and Linda Mooney (petitioners) appeal from final orders of the Department of Public Welfare (Department) affirming the decision of a hearing examiner which dismissed their separate appeals from the discontinuance of their food stamp grants. Because the petitioners' cases involve similar issues, their cases were consolidated for purposes of appeal, by an order of this Court dated January 7, 1982.

Each petitioner resides in an apartment which is leased to the Mercer County Association for the Retarded (MCAR), a non-profit corporation which provides services to the mentally retarded. MCAR subleases the apartments to the petitioners pursuant to its "Community Living Arrangement" program: a program designed to facilitate a previously institutionalized retarded individual's acclimation to normal social settings. The petitioners share their respective apartments with two other individuals who are also participants in MCAR's community living arrangement program. The petitioners are responsible for paying a proportionate (one third) share of the rent and utility bills, and are not subsidized by MCAR in any manner. The petitioners purchase and prepare their own food. Neither of them is blind or disabled, and they do not receive benefits under Titles II or XVI of the Social

62

Security Act.[1] However, both receive general assistance grants from the State.

Van Dusen and Mooney were notified by the Mercer County Assistance Office (CAO) on May 27, 1981 and June 12, 1981, respectively, that their food stamp grants would be discontinued. The administrative agency regulations for the Department unequivocally state that a resident of a group living arrangement must be blind or disabled and receiving benefits under Titles II or XVI of the Social Security Act to be eligible for food stamp grants. 55 Pa. Code §505.2.[2] Thus, the CAO informed the petitioners that they were ineligible for food stamp grants because they were residents of a nonprofit group living arrangement, neither blind nor disabled, and did not receive benefits under Title II or XVI of the Social Security Act.

The federal food stamp program was established in 1964 in an effort to relieve hunger and malnutrition among the more needy members of our society. 7 U.S.C. §2011. Eligibility for participation in the program is determined on a "household" basis and according to financial need. 7 U.S.C. §2014(a). The federal statute, in pertinent part, defines "household" as follows:

(1) an individual who lives alone or who, while living with others, customarily purchases

---

[1] 42 U.S.C. §§401-433, §§1381-1383(c).

[2] 55 Pa. Code §505.2 defines "group living arrangement" as follows:

Group living arrangement means a public or private nonprofit residential setting that serves no more than 16 residents that is certified by the appropriate agency or agencies of the State under regulations issued under section 1616(e) of the Social Security Act. *To be eligible for food stamp benefits, a resident of such group living arrangement must be blind or disabled and receiving benefits under Title II or Title XVI of the Social Security Act.* (Emphasis added.)

food and prepares meals for home consumption separate and apart from the others, or (2) a group of individuals who live together and customarily purchase food and prepare meals together for home consumption. . . . *In no event shall any individual or group of individuals constitute a household if they reside in an institution or boarding house, or else live with others and pay compensation to the others for meals. For the purposes of this subsection . . . disabled or blind recipients of benefits under title II or title XVI of the Social Security Act who are residents in a public or private nonprofit group living arrangement that serves no more than sixteen residents and is certified by the appropriate State agency or agencies under regulations issued under section 1616(e) of the Social Security Act . . . shall not be considered residents of institutions and shall be considered individual households.* (Emphasis added.)

7 U.S.C. §2012(i). The Department's regulations have an essentially identical definition of "household." 55 Pa. Code §505.2. Also, 55 Pa. Code §505.2 defines "group living arrangement" by using the language that qualifies that particular term in U.S.C. §2012(i). However, 55 Pa. Code §505.2 goes further, and requires that a resident of a group living arrangement be blind or disabled, and be a recipient of Title II or Title XVI Social Security benefits, in order to be eligible for a food stamp grant. Therefore, when the Department promulgated its regulations, it apparently construed 7 U.S.C. §2012(i) as providing an additional requirement for food stamp eligibility for *all* residents of group living arrangements.

As indicated, 7 U.S.C. §2012(i) provides, *inter alia,* that: "In no event shall any individual or group of individuals constitute a household if they reside in an

institution or boarding house, or else live with others and pay compensation to the others for meals." Among the various groups of individuals excepted from the category of institutional residents are, "disabled or blind recipients of benefits under Titles II or XVI of the Social Security Act . . . who are residents in a public or private nonprofit group living arrangement that serves no more than sixteen residents. . . ." 7 U.S.C. §2012(i). These excepted individuals are considered "households" as a matter of law, and may apply for food stamps on their own or through an authorized representative of the group living arrangement. 7 C.F.R. §273.1(f)(2)(ii).

There is no language in either the federal statute or federal regulations from which one could infer that Congress intended to do more than make exceptions to the institutional-residents category. In our view, Congress did not intend to disqualify an individual from food stamp eligibility merely because he is not blind or disabled, and living in a group living arrangement. Moreover, it appears that the living arrangements of the instant petitioners could constitute a "household" under 7 U.S.C. §2012(i)(1) or (2). On the record, it is clear that the petitioners do not reside in either an institution or a boarding house, or "live with others and pay compensation to the others for meals."

States must use the federal eligibility standards in determining eligibility for food stamp grants. 7 U.S.C. §2014(b). Furthermore, state or local policies or practices inconsistent with federal statutes or regulations are invalid. *Harrington v. Blum,* 483 F. Supp. 1015 (S.D.N.Y. 1979). 55 Pa. Code §505.2, in requiring that residents of group living arrangements be blind or disabled and that they be recipients of Social Security benefits, in order to be eligible for food stamp grants, is inconsistent with the federal statute and standards. Accordingly, the Department's regulation is, to the ex-

tent of that inconsistency, invalid. The CAO's adjudications, made pursuant to the part of 55 Pa. Code §505.2 that relates to "group living arrangements", must be reversed. Thus, the petitioners' matters must be remanded with a direction to determine their eligibility for food stamp grants consistent with the federal standards.

The final orders of the Department are reversed, and the cases are remanded for further proceedings consistent with this opinion.

ORDER

AND Now, the 12th day of December, 1983, the Final Administrative Action Orders of the Department of Public Welfare dated August 21, 1981, and October 14, 1981 are hereby reversed. The above-captioned consolidated cases are remanded to the Department of Public Welfare for further proceedings consistent with this opinion. Jursidiction is relinquished.